COURT OF APPEALS
DECISION
DATED AND FILED

July 21, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2213-CR**

Cir. Ct. No. 2022CF1698

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

  PLAINTIFF-APPELLANT,

 V.

STEVEN LAMAR HARRIS,

  DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Milwaukee County: DAVID C. SWANSON, Judge. *Reversed and cause remanded*.

Before Donald, C.J., Colón, P.J., and Geenen, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1      PER CURIAM.   The State appeals from an order of the motion court[1] granting Steven Lamar Harris's motion to dismiss with prejudice.  The State argues that Harris consented to a mistrial, and as a consequence, his double jeopardy rights were not violated by a retrial on the dismissed charges.

¶2      We agree with the State.  Accordingly, we reverse the circuit court's order and remand the cause for trial.

## BACKGROUND

¶3      Harris was charged with second-degree sexual assault, felony bail jumping, misdemeanor battery, and felony intimidation of a victim.  The alleged victim was his girlfriend, Jenna,[2] with whom Harris remained in a relationship at the time of trial.  At trial, Jenna generally confirmed that she gave statements and reports to police, but she testified that the accusations against Harris were false. Following nearly two days of testimony and closing arguments, the jury began deliberating.

¶4      The jury resumed deliberations the next morning, and it requested to review several exhibits.  Before the trial court addressed those requests, the jury submitted another note, which read:

> We want to look at the latest evidence requested, but are concerned we have one juror who will not be persuaded, and has referenced multiple times a hesitation to send a "black

---

[1] The Honorable David L. Borowski presided over Harris's trial and ordered a mistrial. We refer to Judge Borowski as the "trial court."  The Honorable David C. Swanson granted Harris's motion to dismiss.  We refer to Judge Swanson as the "motion court."

[2] We use the pseudonym "Jenna" to refer to the victim in this case "to better protect the privacy and dignity interests of crime victims."  WIS. STAT. RULE 809.86(1) (2023-24).  All references to the Wisconsin Statutes are to the 2023-24 version.

man" to jail [without] definitive physical evidence. There is concern we may have [a] hung jury.

¶5    The trial court and the parties returned to court to address these jury notes. While both parties had been represented by two attorneys during trial, neither party had their primary counsel present for this discussion. Harris was represented by his co-counsel. The State was represented by its co-prosecutor and a substitute Assistant District Attorney ("the ADA").

¶6    The trial court commented that the most recent note rendered the previous questions "somewhat moot" because it disclosed a violation of the juror oaths "in at least two ways." First, a juror was improperly "contemplating the defendant being sent to jail." Second, a juror had "injected race" and, thus, the risk of "bias" into their deliberations. The trial court asked both parties for their positions beginning with the State.

¶7    The ADA asked the trial court to read the jury instruction that specifically outlines the jurors' responsibilities. This instruction would address both of the issues identified by the trial court by reminding jurors "not [to] be swayed by sympathy, prejudice, or passion" and not to consider any potential ramifications of their verdict. WIS JI—CRIMINAL 460. According to the ADA, if the lone holdout juror still did not participate after having the instruction re-read, "then so be it, ... it's a mistrial."

¶8    Before turning to the defense, the trial court stated that it was "concern[ed] that this needs to be a mistrial." Again, the trial court stated that the basis for the mistrial would be "at least one juror, is clearly violating his or her oath as a juror." The trial court then turned to defense counsel.

¶9 The defense's position comprised just one sentence: "Your Honor, yes, I agree a mistrial is perfectly fine with us." Soon thereafter, the trial court asked co-counsel to confirm whether "[i]t's the defense position that there should be a mistrial[.]" Co-counsel replied affirmatively, "Yes, Your Honor." The trial court then asked co-counsel to confirm that he had "ran" the issue by primary trial counsel. Co-counsel confirmed that he had done so.

¶10 The trial court stated it was "granting the defense request for a mistrial," and the State represented that it intended to retry Harris. Harris's second trial did not proceed as scheduled because Jenna did not appear for trial. The State prepared a material witness warrant for Jenna, but she still did not appear for the rescheduled trial. Harris was subsequently released on a signature bond pursuant to his speedy trial demand.

¶11 Harris filed a pro se motion to dismiss the case with prejudice, arguing that the mistrial order violated his double jeopardy rights. He asserted in the motion that he objected to the mistrial and requested the same curative instruction that the State had requested. He further argued that there was no manifest necessity to declare a mistrial and that the trial court erroneously exercised its discretion by not investigating whether the statements in the jurors' note were true.

¶12 The State opposed Harris's motion. It argued that Harris was estopped from arguing that the mistrial violated his double jeopardy rights after previously consenting to it. It further argued that Harris had, in fact, consented to the mistrial, and in any event, a manifest necessity for a mistrial existed.

¶13 The motion court granted Harris's motion to dismiss. With respect to whether Harris consented to the mistrial, the motion court found that "the defense clearly consents to a mistrial," but that "[t]he defense never requested a mistrial or

moved for a mistrial." The court then explained that it had "concerns" about "that situation" due to new factors that were not in the record. The court claimed to know that Harris's co-counsel had been a practicing attorney for only six months at the time of the mistrial. The court believed that co-counsel's "newness very likely contributed to his decision to acquiesce to what was a pretty clear decision by the [trial] [c]ourt at that time to determine that a mistrial had occurred."

¶14 After granting Harris's motion to dismiss, the prosecutor asked the motion court to clarify whether it was "making the finding that defense counsel did not consent to the mistrial[.]" The motion court responded:

> No. I agree, defense counsel consented to the mistrial. That is clear on the record. My quarrel with the State is that the defense never moved for a mistrial. My reading of the record is that the defense certainly acquiesced, but the State was the first party to mention mistrial. The [trial] [c]ourt then headed in the direction of a mistrial, and the defense agreed.

¶15 The State now appeals the motion court's order granting Harris's motion to dismiss.

## DISCUSSION

¶16 The State asserts that the motion court's finding that Harris consented to a mistrial compelled it to deny his motion to dismiss. It argues that the motion court's distinction between consenting to a mistrial as opposed to moving for one is not legally significant, and if defense counsel unequivocally consents to a mistrial, a retrial does not violate the defendant's double jeopardy rights. Harris highlights co-counsel's purported lack of experience to represent a defendant charged with serious felonies and generally urges us to defer to the motion court's judgment.

5

¶17 Double jeopardy protects a criminal defendant from successive prosecutions for the same offense. *State v. Kelty*, 2006 WI 101, ¶16, 294 Wis. 2d 62, 716 N.W.2d 886. "The protection against double jeopardy limits the ability of the State to request that a trial be terminated and restarted." *State v. Seefeldt*, 2003 WI 47, ¶17, 261 Wis. 2d 383, 661 N.W.2d 822. A defendant may nevertheless be subjected to a second trial if "the defendant either requests or consents to a mistrial." *State v. Mattox*, 2006 WI App 110, ¶12, 293 Wis. 2d 840, 718 N.W.2d 281 (citation omitted).

¶18 While ordering a mistrial is ordinarily within the circuit court's discretion, *State v. Copening*, 100 Wis. 2d 700, 710, 303 N.W.2d 821 (1981), "[i]nquiry into the trial court's exercise of the discretion to grant a mistrial is necessary only when the defendant has not moved for, or has not consented to, the mistrial," *id.* at 716. Accordingly, with Harris's consent through co-counsel not in dispute, the motion court's order granting Harris's motion to dismiss presents a question of law reviewed de novo. *See State v. Berry*, 2016 WI App 40, ¶9, 369 Wis. 2d 211, 879 N.W.2d 802 ("Whether a defendant's constitutional right to be free from double jeopardy has been violated is a question of law that we review de novo.").

¶19 United States Supreme Court precedent "make[s] clear that a defendant's consent dispels any specter of double jeopardy abuse that holding two trials might otherwise present." *Currier v. Virginia*, 585 U.S. 493, 502 (2018). Applying this precedent, the Wisconsin Supreme Court held in *Copening* "that where there is a motion by the defendant for mistrial or the defendant consents to the mistrial, any barrier to reprosecution is removed[.]" *Id.*, 100 Wis. 2d at 716. Additionally, a circuit court does not have to conduct a colloquy with a defendant about the decision to consent to a mistrial because the United States Supreme Court

has "expressly rejected 'the contention that the permissibility of a retrial ... depends on a knowing, voluntary, and intelligent waiver' from the defendant." *Currier*, 585 U.S. at 501 (alteration in *Currier*) (quoting *United States v. Dinitz*, 424 U.S. 600, 609-10 & n.11 (1976)).

¶20 Moreover, the Wisconsin Supreme Court has made it clear that the distinction between a defendant's consent to a mistrial versus a defendant's motion for a mistrial has no legal significance. In *Copening*, the prosecutor twice violated his statutory duty to disclose witness statements to the defense before the witnesses testified at trial. *Id.*, 100 Wis. 2d at 702. On the second occasion, the circuit court admonished the prosecutor. *Id.* at 703-04. In response, the prosecutor stated, provocatively, "So declare a mistrial if the [c]ourt sees fit there has been prejudice here." *Id.* at 705. The circuit court then asked the defense if it had any motions, and the defense attorney responded by moving for a mistrial, which the court granted. *Id.* at 706.

¶21 On review, our supreme court questioned whether the defense motion for a mistrial "was prompted by the court's approach to the problem and also by the gratuitous statement of the prosecutor," but it ultimately concluded that "[t]he origin of, and motivation for" the motion was immaterial because there was "no doubt ... that the mistrial was at least with the defense counsel's consent." *Id.* at 715-16. Defense counsel's consent sufficed to remove the double jeopardy barrier to a second trial. *Id.* at 716.

¶22 Here, the motion court expressly and correctly found that Harris's co-counsel consented to the mistrial. As the State observes, "[t]hat should have been the end of Harris's motion." The law is clear that "a defendant's consent dispels any specter of double jeopardy abuse that holding two trials might otherwise

present," *Currier*, 585 U.S. at 502, and it is equally clear that defense counsel can communicate consent on the defendant's behalf, *Copening*, 100 Wis. 2d at 716. The United States Supreme Court has "expressly rejected 'the contention that the permissibility of a retrial ... depends on a knowing, voluntary, and intelligent waiver' from the defendant," *Currier*, 585 U.S. at 501 (citation omitted), so Harris's consent, communicated through co-counsel, is not invalidated by co-counsel's alleged lack of experience.[3]

¶23 Moreover, *Copening* refutes the motion court's conclusion that the conduct of the prosecutor and the trial court rendered Harris's consent invalid. In *Copening*, it did not matter that the prosecutor was the first to mention "mistrial" or that the circuit court prompted the defense for motions before the defense formally moved for a mistrial. *Id.*, 100 Wis. 2d at 715-16. Even if the defense's mistrial motion was "prompted by the court's approach to the problem and also by the gratuitous statement of the prosecutor," there was "no doubt ... that the mistrial was at least with the defense counsel's consent." *Copening*, 100 Wis. 2d at 716. Here, because co-counsel undisputedly consented to the mistrial, it does not matter whether the State said "mistrial" first or whether the trial court "prompted" Harris to consent to the mistrial. *Id.*; *see United States v. Buljubasic*, 808 F.2d 1260, 1265-66 (7th Cir. 1987) (declaring that no case "holds that just because the *suggestion* of mistrial comes from the judge initially, the defendant's acquiescence is irrelevant").

---

[3] Although co-counsel's purported lack of experience is of no legal significance on the factual issue of whether Harris consented to the mistrial, we observe that it was not just co-counsel that agreed to the mistrial. The trial court specifically asked co-counsel if he had "ran" the idea by primary counsel, and co-counsel confirmed that he had done so.

¶24    Accordingly, the motion court erred by granting Harris's motion to dismiss. Having found that Harris's co-counsel consented to the mistrial, it was bound by law to deny the motion.[4]

## CONCLUSION

¶25    For the foregoing reasons, we reverse the motion court's order granting Harris's motion to dismiss and remand the cause for trial.

*By the Court.*—Order reversed and cause remanded.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[4] Because we reverse the motion court's order based on Harris's consent to a mistrial, we need not discuss the parties' other arguments. *State v. Blalock*, 150 Wis. 2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989).